# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY SEARLS, | ) | |
| Plaintiff, | ) | Civil Action No. 09-15Erie |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MEADVILLE, | ) | Magistrate Judge Susan Paradise Baxter |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Magistrate Judge Susan Paradise Baxter

### A. Relevant Procedural History

On January 21, 2009, Plaintiff filed the instant civil rights action claiming that Defendant City of Meadville retaliated against him when it constructively discharged him from his employment as a city police officer. Plaintiff avers that Defendant's actions were taken in retaliation for Plaintiff's exercise of his First Amendment rights under the U.S. Constitution and are violative of 42 U.S.C. § 1983 and §1985. Plaintiff resigned his position as a police officer with the City of Meadville in exchange for the City agreeing not to pursue criminal charges against him stemming from a June 7, 2008 off-duty incident with his neighbor. As relief, Plaintiff seeks monetary damages, as well as various forms of injunctive relief including reinstatement to his position as a police officer. ECF No. 11.

### B. Standard of Review - Motion for summary judgment

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. Documents # 9, 10.

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed. R. Civ. P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare

2

assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

**C. Relevant Facts**

At the time Plaintiff applied for a position with Defendant City of Meadville around February of 2006, Plaintiff was aware of a residency requirement for police officers. ECF No. 30-1, Plaintiff's Deposition, page 10.[2] At the time of his hire, Plaintiff owned a home in Vernon Township, outside the city limits of Meadville. Id. at 8. Just before the beginning of

---

[2] The nineteenth edition to The Bluebook: A Uniform System of Citation (Columbia Law Review Ass'n, et al. eds., 19th ed. 2010) provides citation form for court documents filed with the Electronic Case Management system of the federal courts. Rule B7.1.4. Although The Bluebook advises pinpoint citation to a document's original page number, this Court finds its practice of citing to the page number contained in the PACER header more efficient and will continue its prior practice of citing to that page number herein.

3

his employment with the City of Meadville in March of 2006, Plaintiff contacted State Senator Bob Robbins' office to inquire about the status of a proposed House Bill that sought to eliminate residency requirements for police officers. Id. at 7-8. The inquiry was limited to an email and a single phone call with an unnamed woman who indicated to Plaintiff that the House Bill was "dead on the table or a dead bill." Id. at 7-9. Plaintiff moved into the city limits of Meadville.

Plaintiff was appointed as a probationary police officer in March 2006. Id. at 6. Around the time of hire, Plaintiff and Chief Steffanucci discussed that Plaintiff's prior experience as a deputy sheriff would not be credited in the pay scale. Id. at 11. Following a one-year probationary period (presumably around March of 2007), Plaintiff, with the assistance of his FOP union representative, requested an increase in pay due to his prior experience as a Crawford County Deputy Sheriff. Id. at 17-18. Again, Chief Steffanucci denied Plaintiff's request. Plaintiff appealed Steffanucci decision to the City Manager who eventually awarded Plaintiff a partial increase in salary. ECF No. 30-1, Plaintiff's Deposition, at pages 18-19; ECF No. 30-1, Steffanucci Deposition, at page 44; ECF No. 30-1, May 31, 2007 letter from City Manager Chriest to FOP President Gregory Beveridge, page 97.

According to Plaintiff, from the resolution of the pay issue in May of 2007 until June of 2008, there were no problems with his employment. ECF No. 30-1, Plaintiff's Deposition, page 19.

On June 7, 2008, while off-duty, Plaintiff hosted a loud party at his home. Ms. Walleen Ott, age 64, and her mother, age 86, lived across the street from Plaintiff. ECF No. 30-1, Walleen Ott Deposition, pages 129-131. After 11 pm, Ms. Ott came to Plaintiff's house to ask if Plaintiff could quiet down. Id. at 134.

While standing on the roof of his garage, Plaintiff screamed at Ms. Ott: "I never bothered you. Leave me the fuck alone. I'm tired of you bothering me." ECF No. 30-1, Plaintiff's deposition, page 26. Further, Plaintiff admits that he repeatedly told Ms. Ott to "Go fucking die and her mother could, too." Id. In this same conversation, others heard Plaintiff call Ms. Ott and her mother "bitches," "sluts," and "cunts." ECF No. 30-1, Mark Deka Deposition, page 111; ECF No. 30-1, Rose Deka Deposition, page 123. Still another party-goer heard Plaintiff yell "Fucking die, bitch." ECF No. 30-1, Fuller Deposition, page 97. A neighbor heard Plaintiff yell "Fuck you, slut. Fuck you, slut," describing the diatribe as "like a machine gun. Kept saying it over and over again." ECF No. 30-1, Barlow Deposition, pages 145-46. As Ms. Ott left Plaintiff's property, Plaintiff yelled "Go ahead and call my chief. He either won't or can't do anything about it." ECF No. 30-1, Plaintiff's Deposition, page 28; ECF No. 30-1, Ott Deposition, page 137; ECF No. 30-1, Fuller Deposition, page 106. Upon returning home, Ms. Ott called the police. ECF No. 30-1, Ott Deposition, page 138.

Following the confrontation with Ms. Ott, two of the party guests, Rose and Mark Deka, expressed disapproval at the manner in which Plaintiff screamed at Ms. Ott. ECF No. 30-1, M. Deka Deposition, page 113. Plaintiff responded by yelling at them to leave and screaming that he hoped they got into "a car wreck and die[d]." Id. at 114; ECF No. 30-1, Officer Tautin Deposition, pages 154, 155, 157; ECF No. 30-1, Tautin's Report, page 160. See also 30-1, Plaintiff's Deposition, page 24 ("I just told them they could get the fuck out, too, if they didn't like it, they could die in a fucking car wreck."). Plaintiff also threatened the Dekas that if they did not leave, he would have them pulled over by police for DUI. ECF No. 30-1, Rose Deka Deposition, page 119.

Officers Tautin and Makowski arrived on the scene and told the party-goers to "take [the] party inside." ECF No. 30-1, Plaintiff's Deposition, page 27. When asked in deposition, Officer Tautin indicated that he "probably would have filed charges" of "public drunkenness, disorderly conduct, and harassment" if Plaintiff had not been a police officer. ECF No. 30-1, pages 156-157.

Ms. Ott indicated that she wanted to file charges against Plaintiff. ECF No. 30-1, Officer Beveridge's Deposition, page 83; ECF No. 30-1, Ott Deposition, page 139-140; ECF No. 30-1, 149 (transcript of Ott's call to police station). Ms. Ott agreed to forego pressing criminal charges against Plaintiff if he resigned from the police force. ECF No. 30-1, Steffanucci Deposition, page 47; ECF No. 30-1, Ott Deposition, page 140.

Plaintiff signed a letter of resignation on June 20, 2008. ECF No. 30-1, Plaintiff's Deposition, page 36. No criminal charges were filed against Plaintiff.

**D.     Retaliation**

The United States Court of Appeals for the Third Circuit applies a well-established three step test to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment:

> "First, the employee must show that the activity is in fact protected. Second, the employee must show that the protected activity 'was a substantial factor in the alleged retaliatory action.' Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct."

Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). See also Springer v. Henry, 435 F.3d 268, 275 (3d Cir. 2006).

Here, Plaintiff identifies two separate and distinct acts as the allegedly protected speech that provide the basis of his retaliation claim. In his Amended Complaint, Plaintiff alleges that he suffered retaliation by the Defendant City of Meadville 1) because he expressed support for eliminating residency requirements for police officers (prior to his hiring in March of 2006) and 2) due to his opposition to "nepotistic pay" for the Chief of Police's son. ECF No. 11, at ¶ 27.

In Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006) (hereinafter referred to as "Kutztown"), the Third Circuit held that a public employees' statement is protected activity when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." Id. quoting Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). Whether an employee's statements were protected by the First Amendment is a question of law for the court. See Azzaro v. County of Allegheny, 110 F.3d 968, 975 (3d Cir. 1997) (en banc) ("We must first inquire whether Azzaro's reports to Fox and Sirabella were protected by the First Amendment. This is a question of law.").[3]

The parties dispute only the second part of the test – i.e., whether Plaintiff's activities qualify as "matters of public concern." Plaintiff argues in the affirmative, while the defense

---

[3] The Court of Appeals has frequently noted "that the first prong of the First Amendment retaliation test presents questions of law for the court." Hill, 411 F.3d at 127. See also Curinga v. City of Clairton, 357 F.3d 305, 210 (3d Cir. 2004) ("[T]he first factor is a question of law."); Baldassare v. State of New Jersey, 250 F.3d 188, 195 (3d Cir. 2001) (stating that whether speech is on matter of public concern is a "question of law for the court"); McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005) (same); Green v. Philadelphia Housing Authority, 105 F.3d 882, 885 (3d Cir. 1997) ("Determining whether Green's appearance is protected activity […]is an issue of law for the court to decide."); Russ-Tobias v. Pennsylvania Bd. of Probation & Parole, 2004 WL 2600109, at * 5  n.6 (E.D.Pa.) ("[D]etermining whether a public employee's speech is a matter of public or private concern is a question of law for the court.").

7

argues that Plaintiff's inquiries were matters of personal concern undeserving of First Amendment protections.

"[W]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Kunztown, 455 F.3d at 242, citing Rankine v. McPherson, 483 U.S. 378, 384 (1987). "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003). "Speech may involve a matter of public concern if it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials." Id. "[T]o touch on a matter of public concern, speech must enrich, or, at least, provide some 'value' to the community." Chotiner v. Philadelphia Housing Authority, 2004 WL 2915296, at *4 (E.D.Pa.).[4]

*Plaintiff's Support for the Elimination of*

*Residency Requirements for Police Officers*

Here, Plaintiff's characterization of his activities as speech in which he expressed support for the elimination of residency requirements for police officers is not borne out by the evidence. The Supreme Court has specifically held that the public concern element is not satisfied "when a public employee speaks … as an employee upon matters only of personal interest." Connick v. Meyers, 461 U.S. 138, 147 (1983). Here, the record shows that Plaintiff was not speaking on a matter of public concern; instead, he was seeking information about residency requirements in order to make personal housing decisions.

---

[4] See Chotiner, 2004 WL 2915296, at *4 n7, for a thorough compilation of speech that the Third Circuit has found worthy of constitutional protection.

8

Plaintiff knew of the residency requirement when he applied for the position with the City of Meadville. ECF No. 30-1, Plaintiff's Deposition, page 10. At the time of his hire, Plaintiff owned a home in Vernon Township, outside the city limits of Meadville. Id. at 8. Just before the beginning of his employment with the City of Meadville in March of 2006, Plaintiff contacted State Senator Bob Robbins' office to inquire about the status of a proposed House Bill that sought to eliminate residency requirements for police officers. Id. at 7-8. The inquiry was limited to an email exchange and a single phone call (which lasted a "minute or two") with an unnamed woman who indicated to Plaintiff that the House Bill was "dead on the table or a dead bill." Id. at 7-9. Plaintiff's own stated purpose in inquiring about the status of the law "was [so that I] could decide what to do with my house [in Vernon Township]" ECF No. No. 30-1, page 8.

Viewed objectively, Plaintiff's statements did not address matters of public concern. His interest was personal in nature (indeed, it is a stretch, based on this record, to even deem his inquiry as a complaint about the residency requirements) and related to his own situation concerning the city's residency requirement. This does not qualify as a matter of public concern and therefore, cannot serve as the protected activity necessary to support Plaintiff's retaliation claim. See Brennan, 350 F.3d at 412 ("If the speech in question is purely personal, it does not fall under the protective umbrella of the First Amendment.").

*Plaintiff's Opposition to Nepotistic Pay*

Again, Plaintiff's allegation that he opposed nepotistic pay for the Chief's son is not borne out by the record evidence before this Court. Instead, the evidence indicates that Plaintiff pursued a pay increase for himself.

9

In March of 2006 and again in March of 2007 (upon the completion of his probationary period), Plaintiff requested from Chief Steffanucci that his pay level be increased due to his prior experience as a Sheriff's deputy. ECF No. 30-1, page 11. Plaintiff's request was denied both times. Plaintiff appealed Steffanucci decision to the City Manager who eventually awarded Plaintiff a partial increase in salary. ECF No. 30-1, Plaintiff's Deposition, at pages 18-19; ECF No. 30-1, Steffanucci Deposition, at page 44; ECF No. 30-1, May 31, 2007 letter from City Manager Chriest to FOP President Gregory Beveridge, page 97. There is no mention of a system of nepotism or of Plaintiff seeking to eliminate nepotism anywhere in the record. Instead Plaintiff sought an increase in pay for himself.

Plaintiff's pursuit of increased pay for himself is a matter of personal concern. See Conyette v. Westmoreland County, 2005 WL 3447907, at *4 (W.D.Pa.) citing Brennan, 350 F.3d at 412 ("Matters that merely involve personal grievances or complaints about routine employment matters generally do not raise a matter of public concerns.").

Without any evidence that Plaintiff engaged in speech deserving of First Amendment protections, his claim of retaliation fails. The motion for summary judgment will be granted.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY SEARLS,** | ) | |
|       Plaintiff, | ) | Civil Action No. 09-15Erie |
| | ) | |
| v. | ) | |
| | ) | |
| **CITY OF MEADVILLE,** | ) | Magistrate Judge Susan Paradise Baxter |
|       Defendant. | ) | |

O R D E R

AND NOW, this 30th day of March, 2011;

IT IS HEREBY ORDERED that the motion for summary judgment filed by Defendant [ECF No. 28] is GRANTED. The Clerk of Courts is directed to close this case.

                                                                   /s/ Susan Paradise Baxter
                                                                   SUSAN PARADISE BAXTER
                                                                   United States Magistrate Judge